UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

| | | |
|---|---|---|
| JOHN HORRELL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:09-cv-951 |
| | ) | |
| and | ) | Honorable Paul L. Maloney |
| | ) | |
| PRIORITY HEALTH, | ) | |
| | ) | |
| Intervening Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| CEC ENTERTAINMENT, INC., d/b/a | ) | |
| CHUCK E. CHEESE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a diversity action seeking to recover for serious personal injuries suffered by Olivia Horrell, a minor, on December 31, 2006. The defendant is CEC Entertainment, Inc., which owns and operates restaurants under the trade name Chuck E. Cheese. Plaintiffs, who are the duly appointed conservators for their daughter Olivia, assert claims for negligence and premises liability under Michigan law arising from injuries sustained by Olivia when she exited the Chuck E. Cheese restaurant in Grand Rapids, Michigan, and was struck by an automobile. Plaintiffs seek an award exceeding $7 million against defendant.

By order entered July 21, 2011, this court granted Priority Health, a Michigan insurer, leave to intervene in this action to assert an equitable lien against any tort recovery by plaintiff. Priority Health provided group medical insurance coverage for John Horrell and his family pursuant

to an employee health and welfare plan established by his employer, Steelcase Inc. The intervenor's complaint seeks to impose a lien in excess of $379,000.00 to reimburse it for medical benefits paid on behalf of Olivia as a result of the injuries she incurred on December 31, 2006. Alternatively, the intervenor's complaint seeks leave to submit proofs by Priority Health, as subrogee of plaintiff, for the medical treatment and related expenses paid on behalf of Olivia. After plaintiff and defendant responded to the intervenor's complaint, the court conducted a case management conference, at which the attorneys agreed that (1) the right of Priority Health to seek reimbursement or subrogation in this action is susceptible to decision on motion for summary judgment on the basis of the plan documents and (2) all parties consent to the dispositive jurisdiction of a magistrate judge to decide the issues arising from Priority Health's intervention in this action. (*See* Limited Consent and Order of Reference, docket # 84). Pursuant to that agreement, the court entered a scheduling order designed to provide for the expeditious resolution of this issue by summary judgment motion. (docket # 91).

Plaintiffs have moved for summary judgment against Priority Health (Motion, docket # 92) and defendant CEC Entertainment has joined in the motion (docket # 94). Priority Health has filed its response (docket # 95) and plaintiffs have filed their reply brief (docket # 96). The essence of the movants' contention is that the Michigan No-Fault Act precludes Priority Health from seeking reimbursement in this case, because Olivia's injuries were caused by a motor vehicle accident. For the reasons set forth below, I conclude that movants' position is  meritorious. The motion for summary judgment will therefore be granted.

**Findings of Fact**

      The facts relevant to the issue now before the court may be simply stated and are not subject to dispute.  On December 31, 2006, plaintiffs' minor was a patron at the Chuck E. Cheese restaurant in Grand Rapids, Michigan.  Olivia, who allegedly suffers from seizures, left the defendant's premises and found her way to 28th Street, a busy state trunk line, where she was hit by a car and suffered serious and permanent injuries.  Priority Health is a Michigan insurer that provided group health insurance coverage to employees of Steelcase Inc.  (*See* Group Agreement No. 104100, effective 3/1/2006, docket # 93, Ex. 2).  Plaintiff John Horrell was employed by Steelcase on the date of the accident and was a certificate holder under the Priority Health policy.  (*See* docket # 93, Ex. 1).  The group plan covered John Horrell's dependents, including Olivia.  Priority Health paid medical and related expenses incurred by Olivia as a result of the December 31, 2006 traffic accident in an amount allegedly exceeding $379,000.00.  (*See* Intervenor's Complaint, docket # 81, Ex. A).

      Plaintiffs initiated the present lawsuit in the Kent County Circuit Court on September 14, 2009.  Count 1 of the complaint alleges a claim of premises liability arising from Olivia's invitee status and defendant's alleged failure to provide premises that are free from the unreasonable risk of harm to minor patrons.  Count 2 asserts a negligence claim alleging breach of the duty to warn and defendant's failure to act in a reasonable manner once an exit door was found to be ajar.  The complaint seeks damages exceeding $7 million, including economic and non-economic loss. The complaint, however, does not seek to recover for medical expenses, as those expenses have been covered by Priority Health.  By notice of removal filed on October 15, 2009, defendant removed the

case to this court on the basis of complete diversity of citizenship and requisite amount in controversy.  28 U.S.C. § 1332(a)(1).

On July 21, 2011, this court granted Priority Health leave to intervene to assert an equitable claim for reimbursement or subrogation under the terms of its policy.  The policy provision that Priority Health seeks to enforce is set forth in the HMO certificate of coverage.  It provides as follows:

**(13) G.    Subrogation and Reimbursement**

When you receive payment for Covered Services, you assign (or transfer) to us all of your rights of recovery from any third party, including Group. These rights of recovery include a right to subrogation (which means that we can stand in your or your estate's shoes and sue a third party directly for an Illness or Injury for which we are providing services) and a right of reimbursement (which means that we have a right to be reimbursed out of any recoveries you or your estate receives in the future or may have received in the past from third parties relating to your Illness or Injury for which we are providing services). These rights include recoveries from tort-feasors, underinsured/uninsured motorist coverage, worker's compensation, other substitute coverage, any other group or non-group policy of insurance providing health and/or accident coverage (including, but not limited to, any insurance policy having to do with payment of medical benefits that result from an automobile accident, and any riders or attachments to that policy), or any other right of recovery, whether based in tort, contract, or any other body of law.  This assignment is to the fullest extent permitted by law.  Our rights of recovery shall not be limited to recoveries from third parties designated for medical expenses, but shall extend to any and all recovered amounts.  In the case of both subrogation and reimbursement, we will be permitted to pursue a recovery amount equal to the total amount paid by us, or the cost of services provided by us, as applicable, plus reasonable collection costs, because of an Illness or Injury for which you (or your estate or guardian) have or had a cause of action.  You are required, when requested, to acknowledge our rights of recovery in writing.  Our right of recovery, however, is not dependent upon this acknowledgement [sic].  You must tell us immediately, in writing, about any situation that might let us invoke our rights under this section.

You must cooperate with us to help protect our rights under this section. You agree that these rights will be considered the first priority claim with a

first priority lien of 100% of the proceeds of any full or partial recovery against anyone else. Our claim will be paid before any other claims are paid, whether or not you have recovered your total amount of damages. We must be reimbursed in full before any amounts (including attorney's fees incurred by you or your guardian or estate) are deducted from the policy proceeds, judgment or settlement.

Neither you, nor anyone acting for you, will do anything to harm our rights under this section. If you settle a claim or action against a third party, you will be considered to have been made whole by the settlement. We expressively reject the application of any "make whole", common fund or other claim or defense to Priority Health's subrogation and reimbursement rights. We will then have the right to immediately collect the present value of our right to reimbursement, as described above. Our claim will be the first priority claim from the settlement fund. If you receive any proceeds of settlement or judgment, and if we have a right of reimbursement in those proceeds, you must hold those proceeds in trust for us. Transfer of such funds to a third party does not defeat our right of reimbursement if the funds were or are intended for your benefit. We can recover from you expenses we incur because you failed to cooperate in enforcing our rights under this section.

For purposes of this subsection 13.G, the term "you" includes you and any person claiming through or on behalf of you, including relatives, heirs, assigns and successors.

(docket # 95-2 at ID #688).

Plaintiffs and defendant have moved for summary judgment, seeking dismissal of the intervenor's complaint. In essence, the motion for summary judgment seeks a declaration that Priority Health's rights under paragraph 13G of the certificate are rendered unenforceable by the Michigan No-Fault Auto Insurance Act, MICH. COMP. LAWS §§ 500.3101-3179. Specifically, plaintiffs and defendant argue that in paying health insurance benefits arising from an automobile accident, Priority Health was providing coverage that would otherwise have been provided by the no-fault carrier and is therefore bound by the provisions of state law that prevent a no-fault carrier from seeking reimbursement of medical expenses paid on behalf of an insured.

-5-

## Discussion

**A.    ERISA Preemption**

All parties agree that the health care coverage provided by Priority Health to the employees of Steelcase Inc., pursuant to an employer-sponsored health and welfare benefit plan, is governed by the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.  ERISA preempts all state laws that "relate to" an employee benefit plan. Consequently, all issues in cases involving employer-sponsored health plans are generally governed by federal law.  *See Metropolitan Life Ins. Co. v. Mass.*, 471 U.S. 724, 732 (1985); 29 U.S.C. § 1144(a).  The effect of the broad preemption clause in 29 U.S.C. § 1144(a) is mitigated by the so-called "savings clause":

> Except as provided in subparagraph B, nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. §1144(b)(2)(A).  Consequently, a state law relating to an ERISA benefit plan is "saved" from preemption if it "regulates insurance."  *See Metropolitan Life*, 471 U.S. at 733; *Liberty Mut. Ins. Group v. Ironworkers Health Fund of E. Mich.*, 879 F.2d 1384, 1386 (6th Cir. 1989).  As a result of the savings clause, ERISA health plans that choose to provide coverage by means of the purchase of insurance are subject to indirect state regulation through the purchased insurance policy. *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990).  Thus, when a person involved in an automobile accident is covered both by a policy of no-fault insurance and by an insurance policy providing health care benefits, the interrelationship of two policies is subject to the provisions of Michigan law, even if the health insurance policy is issued pursuant to an ERISA plan.  *See American Med. Sec. Inc. v. Auto Club Ins. Ass'n of Mich.*, 238 F.3d 743, 754-55 (6th Cir. 2001).

Conflict between the provisions of a no-fault policy and a health insurance policy often arises in the context of competing "coordination of benefits" clauses, each of which purports to impose the obligation of primary insurance coverage on the other. As a result of provisions of MICH. COMP. LAWS § 500.3109(a), which permits a no-fault carrier to charge a reduced premium to an insured who already has medical coverage, the Michigan courts have developed a priority of coverage rule such that, if a policy of no-fault insurance contains a coordination of benefits clause and an applicable health care policy also contains a coordination of benefits provision, the health insurer will be deemed primarily liable to cover medical benefits. This is known as the *Federal Kemper* rule, after *Federal Kemper Insurance Co. v. Health Insurance Admin., Inc.*, 383 N.W.2d 590 (Mich. 1986) (overruled in part by *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.*, 505 N.W.2d 820 (Mich. 1993)). Thus, under Michigan law, in most situations involving coordinated health and no-fault coverages, the health care coverage will be primary to the auto policy, to the extent that services are covered under the health plan. *See American Med. Sec.*, 238 F.2d at 752.

One further provision of ERISA has the power to change this result. The so-called "deemer clause" provides that an employee benefit plan shall not be deemed to be, among other things, an insurance company or subject to any state law purporting to regulate insurance companies. 29 U.S.C. § 1144(b)(2)(B). In *FMC Corp. v. Holliday*, the Court relied on the deemer clause to distinguish between self-funded plans and insured plans. The Court noted that the states may regulate insured plans indirectly by regulating the insurer and its contracts, but that self-funded plans are exempt from state regulation. 498 U.S. at 61. Although there was some confusion in the present case concerning the status of the Steelcase plan at issue here, Priority Health now concedes that the Steelcase plan is not a self-funded plan. Consequently, the deemer clause does not apply, and the

Priority Health policy is subject to the laws of the State of Michigan, even though it was issued pursuant to an ERISA plan.

For this reason, Priority Health accepted primary responsibility for the payment of the medical expenses incurred by Olivia. The provisions of paragraph 13G of the Priority Health certificate purport to impose on the automobile carrier primary responsibility for such bills. The *Federal Kemper* rule, however, negates the provisions of such coordination of benefit plans when they appear in health policies, where the insured has elected coordinated no-fault benefits. An employee of Priority Health apparently acquiesced in this reading of the policy in a letter to the no-fault carrier dated January 31, 2011, sent before the intervenor's complaint was filed. (docket # 95, Ex. D).

The parties do not dispute any of the legal conclusions set forth above. That is, all agree that the Priority Health policy is subject to state regulation and that, as a result of the *Federal Kemper* rule, Priority Health was primarily liable to cover the health care costs incurred by Olivia. Had the Steelcase plan not purchased insurance, the result would have been different by reason of the deemer clause. In that event, the plan would have been free from all state regulation. But that is not the case, and the Priority Health policy is subject to the restrictions of Michigan insurance law.

**B.     The Reimbursement Provision**

The language in paragraph 13G of the Priority Health certificate, if enforceable under Michigan law, clearly gives Priority Health a right to reimbursement. Paragraph G is couched both in terms of reimbursement and subrogation, and in this way attempts to "cover the waterfront." It provides that Priority Health has the right "to be reimbursed out of any recoveries you or your estate receives in the future or may have received in the past from third parties relating to your Illness or

Injuries for which we are providing services" (docket # 95-2 at ID #688).  It goes on to provide that

Priority Health's reimbursement rights "include recoveries from tort-feasors, underinsured/uninsured

motorist coverage, worker's compensation, other substitute coverage, or other group or non-group

policy of insurance . . . ."  *Id.*  Furthermore, the right of recovery is not limited to recoveries from

third parties designated for medical expenses, "but shall extend to any and all recovered amounts."[1]

*Id.*  Paragraph 13G obliges the insured to cooperate with Priority Health to help it protect its rights

of reimbursement and subrogation.  *Id.*

       Paragraph 13G unequivocally entitles Priority Health to assert its lien for

reimbursement in this action.  The federal courts routinely enforce such reimbursement provisions

and allow ERISA health plans to seek reimbursement for medical benefits from the proceeds of a

tort settlement. Longaberger Co. v. Kolt, 586 F.3d 459 (6th Cir. 2009); *see also Ward v. Wal-Mart

Stores, Inc. Associates' Health & Benefit Welfare Plan,* Nos. 98-1285, 98-1346, 1999 WL 801532

(6th Cir. Sept. 30, 1999)  Priority Health will therefore be entitled to seek reimbursement in this

case unless some provision of Michigan law applicable to the health policy bars recovery.  A state

anti-subrogation rule is a law that "regulates insurance" for purposes of the savings clause.  *See

Medical Mut. of Ohio v. de Soto,* 245 F.3d 561, 572-74 (6th Cir. 2001).  If Michigan law has an anti-

---

[1] This language negates application of the "make whole" rule, a rule of construction that provides that an insurer cannot enforce its subrogation or reimbursement rights before the insured has been made whole, unless the policy language clearly establishes both a priority to the funds recovered and a right to any full or partial recovery.  *See Hiney Printing Co. v. Brantner*, 243 F.3d 956, 959-60 (6th Cir. 2001); *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000).  Paragraph 13 G expressly negates applicability of the make-whole rule, thus removing any doubt in this regard. "We expressly reject the application of any 'make whole', common fund or other claim or defense to Priority Health's subrogation and reimbursement rights. . . . Our claim will be the first priority claim from the settlement fund."  (docket  95-2 at ID #688).

subrogation rule applicable to the Priority Health policy, that rule is not preempted by ERISA and will defeat Priority Health's claim.  *Id.*

### C.    Effect of the No-Fault Act

Plaintiff and defendant argue that, as an insurer subject to Michigan law, Priority Health is precluded from seeking reimbursement for medical expenses paid on behalf of Olivia. They cite no provision of the Michigan Insurance Code directly regulating health plans that would lead to this result.  Rather, plaintiff and defendant argue that Priority Health's reimbursement clause is barred by the Michigan No-Fault Act, because Priority Health provided benefits otherwise payable by the no-fault insurer and therefore is subject to the statutory bar against such reimbursement claims set forth in the Act.  Upon analysis, I find that the moving parties correctly read Michigan case law on this issue and that they are entitled to summary judgment.

In deciding this or any other state-law issue, the court must be guided by the principles flowing from the landmark decision of *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938).  In *Erie*, the Supreme Court held that in diversity cases, the district court must apply state law, as enunciated by the state's highest court.  304 U.S. at 78.  If the state's highest court has not decided an issue, then "the federal court must ascertain the state law from 'all relevant data.'" *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995).  "Relevant data" includes the state's intermediate appellate court decisions.  "[A]n intermediate appellate court's judgment that announces a rule of law is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d

-10-

240, 252 (6th Cir. 2011) (quoting *F.L. Aerospace v. Aetna Cas. & Sur. Co.*, 897 F.2d 216, 218-19 (6th Cir. 1990)).

A no-fault insurance carrier is required to provide personal protection benefits for bodily injury arising from the ownership or use of a motor vehicle, "without regard to fault." MICH. COMP. LAWS §500.3105(2). Personal protection benefits include all reasonable medical expenses. *Id.* at §500.3107(1)(a). The Act provides two exceptions to this otherwise absolute liability. First, the no-fault insurer is entitled to subtract from personal protection payments "benefits provided or required to be provided under the laws of any state or the federal government." *Id.* at §500.3109(a). The legislative purpose of this exclusion is to "require a setoff of those government benefits that duplicate[] the no-fault benefits payable because of the accident and thereby reduce or contain the cost of basic insurance." *O'Donnell v. State Farm Mut. Auto. Ins. Co.*, 273 N.W.2d 829, 835 (Mich. 1979); *accord, Jarosz v. Detroit Auto. Inter-Insurance Exch.*, 345 N.W. 2d 563, 567 (Mich. 1984). The second exception is for coordinated health insurance coverage. The Act allows a no-fault insurer to charge a reduced premium "reasonably related to other health and accident coverage on the insured." MICH. COMP. LAWS §500.3109a. Under the *Federal Kemper* rule, cited above, the health insurance coverage then becomes primarily responsible for medical costs. *See, American Med. Sec. Inc.*, 238 F.3d at 755.

The Michigan No-Fault Act abrogates common-law tort liability for personal injuries that fall below a statutory threshold and, in most cases, abrogates common-law liability for economic loss compensated by no-fault benefits. MICH. COMP. LAWS § 500.3135; *see Citizens Ins. Co. of Am. v. Tuttle*, 309 N.W.2d 174 (Mich. 1981). Where a tortfeasor's liability arises from the tortfeasor's ownership, maintenance, or use of an insured motor vehicle, the tortfeasor is no longer

-11-

liable to compensate the victim for such losses. *See Great American Ins. Co. v. Queen*, 300 N.W.2d 895, 899 (Mich. 1980). The injured party is entitled to recover from such a tortfeasor only for non-economic loss arising from death, serious impairment of body function, or permanent serious disfigurement. MICH. COMP. LAWS § 500.3135. The no-fault insurer's right to reimbursement from an insured's recovery from such a tortfeasor is limited to unusual situations where the insured has recovered elements of damage which have been compensated for by no-fault benefits. MICH. COMP. LAWS § 500.3116; *see Queen*, 300 N.W.2d at 899.

In contrast, the No-Fault Act does not abolish tort liability for injuries or damages caused by non-motorist tortfeasors. *Tuttle*, 309 N.W.2d at 178. Consequently, injured parties are free to seek a full tort recovery from defendants whose liability does not arise from the ownership or operation of a motor vehicle. *Id.* at 178. The no-fault carrier, however, has no right to reimbursement from an insured's recovery from a non-motorist tortfeasor, despite the possibility of duplicate recoveries from the insurer and the tortfeasor. *Tuttle*, 309 N.W.2d at 180-81 (construing MICH. COMP. LAWS § 500.3116(2)).

As a result of the foregoing, a no-fault carrier paying medical benefits would not be entitled to seek reimbursement from the proceeds of a personal injury suit against a nonmotorist tortfeasor. The question arises whether insurers who provide medical coverage in lieu of no-fault medical benefits (either through a government-required plan under § 3109 or a coordinated health coverage plan under § 3109a) are subject to the same restrictions on reimbursement rights that apply to no-fault carriers. The Michigan courts have answered this question in the affirmative.

The first case to address this issue was *Great American Ins. Co. v. Queen*, 300 N.W.2d 895 (Mich. 1980). *Queen* involved an employee injured in an automobile accident during

-12-

the course of his employment. The injured party was therefore covered by both no-fault insurance and workers' compensation insurance. Pursuant to § 3109(a), the liability of the no-fault insurer was reduced by the amount of workers' compensation benefits "paid or payable" on account of the injury. 300 N.W.2d at 896. The workers' compensation insurer covered $4567 in medical expenses, and the liability of the no-fault carrier was reduced by that amount. The injured party then sued third-part tortfeasors, settling for $18,500. *Id.* at 897. The workers' compensation carrier sued the insured for reimbursement of medical expenses, which is a remedy granted to an insurer under the Workers' Compensation Act.

The Michigan Supreme Court nevertheless denied recovery, on the basis of the provisions of § 3116 of the No-Fault Act. The court held that the provisions of § 3109(a), which grant the no-fault carrier the right to offset workers' compensation benefits paid or payable, show a legislative intent that the workers' compensation carrier "substitute for the no-fault insurer to the extent that workers' compensation benefits substitute for no-fault benefits otherwise payable." *Queen*, 300 N.W.2d at 901. "In this case, the [workers' compensation] carrier seeks reimbursement for medical expenses which would be compensable under the no-fault act – there is no right to reimbursement for such payments." *Id.*

*Queen* squarely holds that a government-required benefit plan that pays medical bills which would otherwise be covered by the no-fault carrier stands in the shoes of the no-fault carrier and is subject to the statutory restrictions against reimbursement from the proceeds of a tort recovery. Five years later, the Michigan Court of Appeals applied *Queen* in denying a workers' compensation carrier reimbursement from a settlement with a nonmotorist tortfeasor. *Ryan v. Ford Motor Co.*, 368 N.W.2d 266 (Mich. Ct. App. 1985). "Had it paid no-fault benefits, Liberty Mutual

would have had no right of reimbursement from the settlement as a no-fault insurer. Since Liberty Mutual's right to reimbursement as a compensation carrier was coextensive with its right to reimbursement as a no-fault insurer, Liberty Mutual had no right to reimbursement from the [insured party's] settlement with [the tortfeasors] for the workers' compensation benefits paid to the [injured party], *which substituted for no-fault benefits*. 368 N.W.2d at 269 (citations omitted, emphasis added).

The Michigan Court of Appeals next addressed this question in *Great Lakes Amer. Life Ins. Co. v. Citizens Ins. Co.*, 479 N.W.2d 20 (Mich. Ct. App. 1992), a case indistinguishable from the present one. In that case, Great Lakes (which had issued a group health policy covered by ERISA) sued to enforce its contractual rights of subrogation and reimbursement against the insured's tort recovery. Although the insured was injured in an automobile accident, the no-fault carrier had not covered the insured's medical expenses, because the no-fault policy contained a coordination of benefits clause. The group health insurer recognized that pursuant to the *Federal Kemper* rule, it was primarily liable for coverage of medical expenses. 479 N.W.2d at 21. "It is not disputed that the entirety of this amount would have been paid by the no-fault carrier as personal protection insurance benefits were it not for the coordination clause contained in the Citizens' no-fault policy." *Id.* Great Lakes sued to enforce its contractual right of reimbursement against the injured party's tort recovery.

The Michigan Court of Appeals held that the health insurer had no right of recovery, despite the language of its policy creating a right of reimbursement. The Court's opinion, written by Judge Richard Griffin (now a judge of the Sixth Circuit Court of Appeals), pointed out that an insurance company "responsible for no-fault benefits" has a right of reimbursement from the

-14-

insured's tort claim only in narrow circumstances, none of which were present in that case.  479

N.W.2d at 23.  The Court then discussed the Michigan Supreme Court's decision in *Queen*, in which

the workers' compensation carrier that paid benefits substituting for no-fault personal protection

coverage was held to be subject to the bar against reimbursement created by Mɪᴄʜ. Cᴏᴍᴘ. Lᴀᴡs

§ 3116, just as if it had been a no-fault carrier.  The Court of Appeals held that the rationale of

*Queen* applies to health insurers as well:

> We hold that the instant case is controlled by *Great American Ins.*
> *Co. v. Queen*.  The medical insurance benefits paid by plaintiff, Great
> Lakes American Life Insurance Company, substitute for no-fault
> benefits  otherwise  payable.    Under  such  circumstances,  the
> contractual  reimbursement  rights  of  Great  Lakes  Insurance  are
> subject to the limitations of § 3116 of the No-Fault Act and are
> therefore unenforceable.

479 N.W.2d at 25.  The Court determined that reimbursement to the health carrier would be contrary

to the no-fault priority scheme as construed by *Federal Kemper*.  *Id.*

Read together, *Queen* and *Great Lakes* establish a principle of Michigan law designed

to protect the integrity of the *Federal Kemper* rule.  A person injured in an automobile accident, who

would otherwise be entitled to personal protection benefits under a no-fault policy, is protected from

reimbursement claims from insurers who are directed by state law to provide coverage in lieu of no-

fault benefits: those insurers providing coverage pursuant to state or federal government mandate

(§ 3109) and health insurers primarily liable for medical benefits pursuant to a coordination of

benefits clause and the *Federal Kemper* rule (§ 3109a).  In either case, the other insurer "stands in

the shoes" of a no-fault carrier and is therefore subject to the restrictions set forth in § 3116

concerning rights of reimbursement.  *Great Lakes*, 479 N.W.2d at 24.

-15-

The published decision of the Michigan Court of Appeals in the *Great Lakes* case precludes Priority Health's claim for reimbursement in the present case. The factual circumstances in the two cases are indistinguishable. In each case, the insurer seeking reimbursement provided medical coverage under an employer-sponsored plan. In each case, the health insurance coverage substituted for no-fault benefits, which would otherwise have been payable to the insured, but for the coordination of benefits clause and the effect of the *Federal Kemper* rule. When a federal district court is attempting to discern state law, such published decisions of the intermediate court of appeals, although not controlling, cannot be disregarded unless the federal court is convinced by "other persuasive data that the highest court of the state would decide otherwise." *Commissioner of Internal Revenue v. Bosch's Estate*, 387 U.S. 456, 465 (1967); *accord, Michigan First Credit Union,* 641 F.3d at 252; *Pennington v. State Farm Mut. Auto Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) ("Intermediate state appellate courts' decisions are also viewed as persuasive unless it can be shown that the state's highest court would decide the issue differently.")

In the present case, there is no persuasive evidence that the Michigan Supreme Court would reject the holding of the State Court of Appeals in *Great Lakes*. No subsequent Michigan case has refused to follow *Great Lakes*. In fact, the cases that do exist indicate that *Great Lakes* continues to be applied to cases indistinguishable from the present case. For example, *Attard v. Detroit Edison Co.*, No. 202960, 1998 WL 1988579 (Mich. Ct. App. Dec. 18, 1998) (unpublished), involved an attempt by an ERISA health plan to intervene as a silent plaintiff in a tort action. The insured party was injured when the car in which he was a passenger ran into a telephone pole. The ERISA plan, of which the injured party's father was a participant, paid her medical expenses, because the health care policy was primary to the no-fault policy as a consequence of a coordination

of benefits clause. The injured party subsequently sued Detroit Edison for negligent installation of a telephone pole and Ford Motor Company under a theory of products liability. Under the holdings of the Michigan Supreme Court cited above, the injured party's tort remedy against these defendants was not abrogated by the No-Fault Act, as their liability did not arise from the ownership or use of an automobile. Furthermore, as a result of MICH. COMP. LAWS § 500.3116(2), as construed in *Tuttle*, a no-fault carrier providing medical coverage would have been barred from intervention. The trial court denied intervention to the health insurer, and the Court of Appeals affirmed. *Attard,* 1998 WL 1988579 at * 4-5.

Relevant to the issue now before the court, the Court of Appeals affirmed denial of intervention on the ground that "a health care insurer under a coordinated no-fault policy is in reality providing substitute no-fault benefits." *Attard,* 1998 WL 1988579, at * 4. On that basis, the court found *Queen*, *Ryan and Great Lakes* to be controlling. The Court of Appeals panel therefore applied the rule of *Queen* so as to treat an ERISA health plan as if it were a no-fault carrier, because the health plan was "in reality providing substitute no-fault benefits." 1998 WL 19885979, at * 4.

The Eastern District of Michigan has come to the same conclusion, again in a case indistinguishable from the present one. In *American Med. Sec. Inc. v. State Farm Auto Ins. Co.*, 82 F. Supp. 2d 717 (E.D. Mich. 2000), the administrator of a group employee medical plan that had provided medical coverage to a person injured in a car accident sought a declaration that it was entitled to reimbursement for any recovery that the injured party might receive in a tort settlement. The Court determined that the health plan, although covered by ERISA, was not self-funded. Therefore, the insurance policy provided by the ERISA plan remained subject to state regulation under the savings clause. As a result, the health insurer was found to be primarily liable under the

*Federal Kemper* rule. 82 F. Supp. 2d at 719-20. The Court further determined that the health insurer had no right to reimbursement from the injured party's tort recovery. Relying on the *Great Lakes* decision, the Court found that the health insurer had paid benefits in substitution for no-fault benefits "otherwise payable." 82 F.Supp. 2d at 721. "Thus, the insurer's contractual reimbursement rights were subject to the limitations of the No-Fault Act, found in MCL § 500.3116, regardless of the language of the contractual reimbursement provision." 82 F.Supp. 2d at 721. The Court entered judgment against the health insurer on its request for reimbursement. "From the foregoing, [the health insurer's] reimbursement rights are dictated by Michigan's no-fault law, not the contractual reimbursement provision. To the extent that [the health insurer] seeks a declaratory judgment based the contractual provision, it cannot prevail because that provision is not enforceable." 82 F. Supp. 2d at 722.

Beyond the fact that subsequent cases have followed the *Great Lakes* decision, that decision appears to reflect accurately the policy of Michigan's No-Fault Act. It is clear that *Great Lakes* and decisions like it are attempting to protect the integrity of the no-fault system and to avoid an unintended circularity that would otherwise undermine the effect of the *Federal Kemper* rule. Under *Federal Kemper*, primary responsibility for covering medical expenses falls upon the health care insurer as long as the no-fault policy has a coordination of benefits clause. Enforcement of a health insurer's contractual reimbursement rights turns this result on its head. In those circumstances in which the health insurer is allowed reimbursement against the injured party for healthcare expenses, personal protection benefits have no longer been "provided" to the insured. In such circumstances, the insured may then present his medical bills to the no-fault carrier. "To the extent that benefits are retrieved by the alternative source provider out of the worker's tort

recovery, they at that point cease to be 'benefits provided' within the meaning of § 3109(1). . . ." *Sibley v. Detroit Auto. Inter-Insurance Exch.*, 427 N.W.2d 528, 531 (Mich. 1988). In such circumstances, the insured is allowed to collect PIP benefits from the no-fault carrier. The *Federal Kemper* rule is thus circumvented: The health insurer is reimbursed, while the burden of coverage falls on the no-fault carrier. This is precisely the result that obtains when the health plan is self-funded. *See Shields v. Govt. Employees Hosp. Ass'n.,* 450 F.3d 643 (6th Cir. 2006); *Glover v. Nationwide Mut. Fire Ins. Co.,* 676 F.Supp. 2d 602, 614 (W.D.Mich. 2009). In the case of health plans governed by federal law, the Michigan courts accept this abrogation of the *Federal Kemper* rule, as they must, owing to the effect of federal preemption. *Sibley*, 427 N.W.2d at 531. However, where both the health insurance policy and the no-fault policy are governed by state law, the Michigan courts avoid circumvention of the *Federal Kemper* rule by imposing on the health insurer the same limitations on reimbursement that apply to a no-fault carrier.

Judge Griffin's decision in the *Great Lakes* case is persuasive authority concerning the ability of a health insurer to seek to reimbursement in the circumstances of the present case. Under the holding of *Great Lakes* and its progeny, a health insurer paying medical benefits in lieu of no-fault coverage is subject to the restrictions on reimbursement established by MICH. COMP. LAWS § 500.3116. Reimbursement from an insured's third-party tort claim is available only in the following situations: (1) accidents occurring outside the state; (2) actions against uninsured owners or operators; or (3) intentional torts. *Great Lakes*, 479 N.W.2d at 23. The present case does not involve any situation in which reimbursement is allowable for a no-fault carrier. As Priority Health stands in the shoes of a no-fault carrier and is therefore subject to the strictures of § 3116, it has no

enforceable claim under paragraph 13G of the policy for subrogation or reimbursement because the claim is barred by Michigan law.

### Conclusion

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (docket # 92), joined by defendant (docket # 94), will be **GRANTED**.  A judgment will be granted against Intervenor Priority Health, denying relief on its Intervenor's Complaint.

Date:  October 18, 2011                              /s/ Joseph G. Scoville
                                                     JOSEPH G. SCOVILLE
                                                     United States Magistrate Judge